UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SEAN RICHARD, individually, and on behalf of other members of the general public similarly situated;

Plaintiff,

v.

ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC., a Delaware corporation; ABBOTT LABORATORIES, an Illinois corporation; and DOES 1 through 100, inclusive,

Defendants.

Case No. 2:25-cv-11795-WLH-SK

**ORDER RE MOTION TO REMAND [26]**

The Court is in receipt of Plaintiff's Motion to Remand (the "Motion"). (Mot., Dkt. No. 26), No party filed a written request for oral argument stating that an attorney with five years or less of experience would be arguing the matter. (*See* Standing Order, Dkt. No. 16 at 16). Further, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for February 27, 2026, is **VACATED** and the

matter taken off calendar.  For the reasons stated herein, Plaintiff's Motion is **DENIED**.

## I.    BACKGROUND

To resolve the Motion, the Court must determine whether the case's removal from state court complied with the Class Action Fairness Act ("CAFA").  The only issue in dispute is whether Defendants have met their burden to establish that the amount in controversy exceeds $5 million.

On September 30, 2025, Plaintiff Sean Richard ("Plaintiff") filed a class action complaint in the Superior Court of California for Los Angeles County.  (Ex. A to Declaration of Michele J. Beilke in Support of Notice of Removal ("Complaint"), Dkt. No. 3-1).  The Complaint asserts ten causes of action against Defendants St. Jude Medical, Cardiology Division, Inc. ("St. Jude") and Abbott Laboratories for: (1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums); (3) Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums); (4) Violation of California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages); (5) Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid); (6) Violation of California Labor Code § 204 (Wages Not Timely Paid During Employment); (7) Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements); (8) Violation of California Labor Code § 1174(d) (Failure To Keep Requisite Payroll Records); (9) Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses); and (10) Violation of California Business & Professions Code § 17200, et seq.  (*See generally id.*).  Plaintiff brings the suit on behalf of himself and a putative class of "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment."  (*Id.* ¶ 14).

On December 12, 2025, Defendants removed the case to this Court, pursuant to the CAFA.  (Notice of Removal, Dkt. No. 1).  Defendants allege that Plaintiff's complaint put into controversy over $5,000,000, and estimates the amount in controversy to exceed $30,000,000.  (Notice of Removal ¶¶ 27, 52).  In support of their removal, Defendants submitted a declaration of Charlene Chua, an HR Generalist employed by Defendant Abbott Laboratories, who declared the following based on a review of business records relating to employees of Abbott and its subsidiaries and affiliates, including St. Jude:

  a. During the Class Period, Defendants collectively employed more than 100 Putative Class Employees;

  b. During the Class Period, the Putative Class Employees were or are fulltime employees, meaning they were scheduled to work, and regularly did work, at least eight hours per day, five days per week;

  c. The Putative Class Employees worked an aggregate of more than 175,000 workweeks during the Class Period and earned an average hourly rate of $29.57/hour and a weighted hourly rate of $30.80/hour during the Class Period. At all times during the Class Period, Defendants paid their respective Putative Class Employees at least the minimum wage;

  d. More than 466 Putative Class Employees had their employment end on or after September 30, 2022; as to those 466 employees, the average hourly rate of pay was $28.90/hour and the weighted hourly rate was $30.27/hour; and

  e. During the Class Period, the Putative Class Employees have been paid on a weekly basis and issued weekly wage statements. Between September 30, 2024, and the present, Defendants collectively employed at least 814 Putative Class Employees for at least one pay period, and at least 629 of those Putative Class Employees each received 41 or more wage statements during this time. The remaining 185 Putative Class Employees received a

3

collective total of 2,931 wage statements during the same time period.

(Declaration of Charlene Chua in Support of Notice of Removal ("Chua Decl."), Dkt. No. 4).  Based on these factual assertions, Defendant outlined several assumptions and estimates related to the amount in controversy.  (*See generally* Notice of Removal).  As to Plaintiff's unpaid overtime claims, Defendants assumed at least one hour of unpaid overtime per week per employee.  With 175,000 workweeks at issue at an average hourly rate of $29.57 per hour (*see* Chua Decl. ¶ 5c), multiplied by the overtime rate in California (1.5 times the regular rate for hours over eight per day or forty per week), Defendants estimate the overtime claim puts at least $7,762,1255 in controversy.  (Notice of Removal at 9).  This assumption hinged on Plaintiff's allegation that Defendants engaged in "a pattern and practice" of "intentionally and willfully fail[ing]" to pay overtime wages, despite being "required to work" overtime-eligible hours.  (Compl. ¶¶ 26, 40, 57-58).  Also relevant is Plaintiff's allegation that he and other class members were "required" to work (*see id.* ¶ 40) more than eight (8) hours in a day and/or forty (40) hours in a week during their employment with Defendants, and that they in fact did work to that extent.  (*Id.* ¶ 25).

On January 23, 2026, Plaintiff filed the instant Motion.  (Mot.).  Defendant filed a timely opposition brief ("Opp'n," Dkt. No. 28) and an accompanying Request for Judicial Notice ("RJN," Dkt. No. 29-1).  Plaintiff did not file a reply in support of the Motion.

## II.    LEGAL STANDARD

CAFA evinces "a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Jauregui v. Roadrunner Transportation Servs.*, Inc., 28 F.4th 989, 993 (9th Cir. 2022) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)).  As such "no antiremoval presumption attends cases invoking CAFA[.]" *Dart Cherokee*, 574 U.S. at 89.  Still, a case may only be removed pursuant to CAFA when certain

jurisdictional requirements are met.  28 U.S.C. § 1332(d).  As relevant to the pending Motion, a defendant may only remove a Class Action to federal court when the amount in controversy exceeds $5,000,000.  28 U.S.C. § 1332(d)(2).[1]  The amount in controversy is "an estimate of the *entire* potential amount at stake in litigation," rather than the likely or probable liability of a given defendant.  *Jauregui*, 28 F.4th at 994 (emphasis in the original).

A defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee*, 574 U.S. at 89.  When a plaintiff disputes the allegation, both sides may submit proof and "the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  *Id.* at 88.[2]  A defendant "must be able to rely 'on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million,' as long as the reasoning and underlying assumptions are reasonable."  *Jauregui*, 28 F.4th at 993 (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)).  A defendant's assumptions, however, "cannot be pulled from thin air but need some reasonable ground underlying them."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015).

## III.    DISCUSSION

The disposition of Plaintiff's Motion hinges on whether the action meets CAFA's $5,000,000 amount in controversy requirement.  The Court therefore must determine whether Defendants' assumptions justifying their amount in controversy

---

[1] While CAFA imposes requirements beyond the greater than $5,000,000 amount in controversy, the disputed issue in the instant Motion is whether Defendants met their burden as to the amount in controversy.  (*See generally* Mot.; Opp'n).

[2] When a plaintiff, as here, makes a factual attack on a motion to remand, Plaintiff is not required to submit evidence and "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence."  *Harris v. KM Indus.*, Inc., 980 F.3d 694, 700 (9th Cir. 2020).

estimates are reasonable—namely, the calculations of (1) unpaid overtime, (2) meal and rest break premiums and (3) waiting time penalties incurred by Defendants. However, because Defendants' reasonable calculations of the damages stemming from alleged unpaid overtime, and associated attorneys' fees, far exceed the requisite amount in controversy, the Court need not delve into the remaining assumptions. Accordingly, the Court addresses only Plaintiff's objections to the competency of Defendants' evidence supporting their Notice of Removal and the reasonableness of Defendants' overtime violation assumptions.

### A. **Competency of Evidence Underlying Defendants' Assumptions**

Plaintiff primarily disputes the competency of Defendants' proffered evidence underlying their estimates in support of their Notice of Removal. Specifically, Plaintiff contends that "Defendants fail[ed] to submit any declaration from an actual custodian of records," failed to "identify which payroll or timekeeping databases were queried, the individuals who input or maintain data, or why those records are accurate and complete." (Mot. at 7).

To the extent Plaintiff lodges an evidentiary objection, those are inapplicable at this juncture. In ruling on a motion to remand, courts "may 'view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists,' including summary judgment-type evidence." *Cardroom Int'l LLC v. Scheinberg*, No. 12–02870 MMM (AGRx), 2012 WL 2263330, at *4 n.12 (C.D. Cal. June 18, 2012) (internal quotation omitted). The evidence considered on a motion to remand should not be conflated with that which is actually admissible at trial (or at the summary judgment stage) pursuant to the Federal Rules of Evidence. *See* Johnson v. Sunrise Senior Living Mgmt., Inc., No. CV1600443BRORAOX, 2016 WL 917888, at *4 (C.D. Cal. Mar. 8, 2016).

The Court nevertheless finds Ms. Chua's declaration sufficient for purposes of this Motion. Ms. Chua specifically attests that her declaration is based on her personal knowledge and a review of company records including "personnel information,

6

payroll records (including wage statements), and time records of current and former employees of Abbott or its subsidiaries, including St. Jude, including those regarding Plaintiff." (Chua Decl. ¶¶ 2-3). Ms. Chua is familiar with and has "access to the electronic payroll system and electronic database regarding employees of Abbott or its subsidiaries, including St. Jude." (*Id.*).

Although Plaintiff additionally claims "it is unclear whether Defendants' representatives made their own calculations based on records they reviewed, simply recited information already in existence, or obtained these figures from some other undisclosed source," (Mot. at 8), Ms. Chua specifically attests in her declaration the precise sources of these calculations and where these figures were obtained. (*See* Chua Decl. ¶ 4 ("Those systems, using various search and filter functions, are able to determine the number of employees holding hourly, non-exempt positions for a specific time period, the number of terminated employees during a specific time period, number of workweeks for a specific time period, and the number of pay periods for a specific time period")). Moreover, this Court has found similar declarations from human resources professionals to be competent evidence for purposes of calculating the CAFA amount in controversy requirement. *See, e.g.*, *Oda v. Gucci Am., Inc.*, No. 2:14–CV–07469–SVW, 2015 WL 93335, at *3–5 (C.D.Cal. Jan. 7, 2015) (considering employment data asserted in corporate employee's declaration to establish the amount in controversy); *Hess v. Valero Services, Inc.*, No. 2:23-cv-04578-WLH-SK, 2023 WL 5401505, at *3 (C.D. Cal. Aug. 22, 2023) (accepting declaration from senior payroll lead establishing relevant CAFA controversy calculations). The Court finds the same to be true here; Ms. Chua's declaration is competent evidence to support Defendants' Notice of Removal.

### B. Assumptions Related to Uniform Violations of Overtime Pay

The Ninth Circuit "distinguishes between complaints of 'uniform' violations and those alleging a 'pattern and practice' of labor law violations." *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016) (quoting *LaCross v.*

*Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)).  Here, Plaintiff alleges a "pattern and practice" violation—or in their words, that Defendant "engaged in a policy and practice of failing to pay Plaintiff and the class members for all overtime hours, resulting in unpaid wages." (Compl. ¶¶ 26, 40, 57-58).  A pattern and practice theory "does not necessarily mean always" violating the Labor Code, so the "defendant seeking removal bears the burden to show a preponderance of the evidence" of the CAFA-required amount in controversy.  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  But the Ninth Circuit this year clarified that, as it relates to assumed Labor Code violation rates, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist."  *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025).  For those reasons, this Circuit permits CAFA defendants to assume a violation rate in light of the plaintiff's complaint.  Considering Plaintiff's allegations in the instant action, Defendants' estimates of alleged unpaid on-call and overtime wages are reasonable.

Defendants specifically interpret Plaintiff's unpaid overtime allegations to mean one hour of overtime per week per putative class member.[3]  Plaintiff contests the reasonableness of Defendants assuming one hour of unpaid overtime work per week, that every putative class member worked long enough shifts to trigger overtime pay, and that no lawful overtime compensation was ever paid by Defendants on the assumed overtime hours.  (Mot. at 9, 11-12).

The Court views Defendants' assumptions as eminently reasonable given that Plaintiff alleges a "pattern and practice" of Labor Code violations in their Complaint

---

[3] Defendants note in their Notice of Removal that they utilized "the more conservative average employee hourly rate only, as opposed to the weighted average hourly rate, which considers the number of workweeks worked by each employee at that employee's individual hourly rate. The weighted average hourly rate is $30.80/hour." Accordingly, such a calculation "underestimates the amount in controversy."

related to Defendants "failing to pay them for all regular and/or overtime wages earned." (Compl. ¶ 26). Plaintiff further alleges that he and other class members were "required" to work (*see id.* ¶ 40) more than eight (8) hours in a day and/or forty (40) hours in a week during their employment with Defendants, and that they in fact did work to that extent. (*Id.* ¶ 25). It therefore follows that an assumption of at least one hour of unpaid per work week is properly "founded on the allegations of the complaint." *Perez*, 131 F. 4th at 808. "[A]ssumptions made part of the defendant's chain of reasoning need not be proven." *Id.* Holding otherwise would require defendants to "prove [they] actually violated the law at the assumed rate" while simultaneously maintaining they did not commit the alleged violations. *Id.*; see also *Franklin v. Home Depot U.S.A., Inc.*, No. 5:25-CV-03657-BLF, 2025 WL 1983036, at *5 (N.D. Cal. July 17, 2025) (noting that "with regard to assumed violation rates, since the violations are merely *alleged* and the defendant presumably believes that evidence of the violation rate 'does not exist.'").

Defendants ascertained their unpaid overtime calculations by assuming that *at least* one hour of overtime per workweek per putative class member went unpaid. It is wholly reasonable for Defendants to derive such an estimate from the imprecise "pattern and practice" allegation by Plaintiff. (Compl. ¶ 26); *see also Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, *67 (C.D. Cal. May 9, 2011) (finding that defendant's estimates based on one hour of unpaid overtime per class member were reasonable given allegation of regular failure to pay overtime); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, *4 (E.D. Cal. 2011) (finding that because the complaint did not "lend itself to precise calculations," defendants' conservative calculations were reasonable). Moreover, the Court must square its reasoning with Ninth Circuit's recent decision in *Perez*. 131 F.4th 804 at 808. That opinion admonishes lower courts against requiring Defendants to introduce evidence of an alleged violation rate—which is in effect, a concession of liability. *Id.* A court, however, can require a defendant to "provide information derived from [their

employment] records" as to the number of employees in a putative class. *Id.* That is precisely what Defendant has provided here to support their calculations. (*See* Chua Decl. ¶ 5).

The Court therefore estimates the amount in controversy as to Plaintiff's unpaid overtime claims to stand at $7,762,125 *without* factoring in damages associated with wage statement and waiting time penalties and related attorneys' fees. Plaintiff may dispute the meaning of "pattern and practice" in their Complaint, but this Court is bound by the language of the complaint upon removal and the logical inferences that flow from it. Plaintiff was "free to use some more specific phrase . . . when drafting the complaint." *Perez*, 131 F.4th at 810; *see also Eleazar Santos v. The Pictsweet Co., et al.*, No. 2:25-CV-03181-AB-SSC, 2025 WL 2424357, at *5 (C.D. Cal. Aug. 20, 2025). Accordingly, the Court accepts Defendants' estimated violation rate and unpaid overtime calculations.

### C. **Attorney's Fees**

Attorney's fees are "properly included in calculations of the amount in controversy. *Garibay*, 539 F. App'x at 764. In this Circuit, 25% of the total recovery is the "benchmark" level for reasonable attorney's fees. *Id.* The Court accepts Defendants' proposed 25% recovery for attorney's fees. That proportion of the estimated $7,762,125 in unpaid overtime hours alone—deemed reasonable by the Court for the foregoing reasons—yields $1,940,531.25 in attorney's fees.

Because the amount in controversy associated with Plaintiff's unpaid overtime claim—and estimated attorneys' fees associated with that claim only—far exceeds CAFA's requirement of $5,000,000, the Court declines to scrutinize Defendants' assumptions underlying Plaintiff's remaining claims and related damages.

### D. **Total Amount in Controversy Estimate**

The Court's accepted amount in controversy estimates are as follows:

| Alleged Unpaid Overtime | $7,762,125 |
|---|---|
| Alleged Wage Statement Penalties | Undetermined[4] |
| Attorney's Fees | $1,940,531.25 |
| Other Causes of Action | Undetermined |
| **TOTAL** | At least $9,702,656.25 |

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand. Because the Court need not rely on the documents for which Defendants seek judicial notice, Defendants' Request for Judicial Notice is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated: February 25, 2026

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

---

[4] The Court need not evaluate the reasonableness of Defendants' estimates related to alleged penalties relating to meal and rest breaks, wage statements, and waiting time As discussed in this Order, Defendants' reasonable assumptions as to the other components of the amount in controversy are sufficient to overcome the CAFA amount in controversy requirement, and it is reasonable to assume that *some* amount can be attributed to those penalties.

11